UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Civil Action No. 1:16cv20270

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

OTC CAPITAL PARTNERS, LLC,
ADI M. ELFENBEIN and
JOSEPH L. PITTERA

Defendants.

## COMPLAINT

Plaintiff, United States Securities and Exchange Commission ("Commission"), states and alleges as follows against defendants OTC Capital Partners, LLC ("OTC Capital"), Adi M. Elfenbein, and Joseph L. Pittera (collectively, "Defendants"):

## SUMMARY

1.      From February to June 2011, Elfenbein, through his alter ego company OTC Capital, entered into ten transactions with MusclePharm Corporation ("MSLP") in which OTC Capital obtained approximately 24 million shares of MSLP penny stock at a deep discount to the market price and then illegally resold those shares to the investing public without complying with the registration provisions of the federal securities laws.  OTC Capital and Elfenbein were able to sell this stock to the public only because OTC Capital's attorney, Pittera, issued baseless legal opinions to MSLP's transfer agent opining that the shares were "free trading" pursuant to Section 5 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77e].

2.      Each of the transactions followed the same basic pattern.  First, OTC Capital purchased "aged debt" from MSLP vendors by paying the vendors cash in the amount of the debt.  OTC Capital simultaneously entered into Debt Settlement Agreements with MSLP that contained provisions permitting OTC Capital to convert the newly-acquired debt into MSLP common stock at a deep discount to the market price.  OTC Capital then immediately converted the debt to MSLP shares with the intent to immediately sell the shares to the investing public for a large, virtually guaranteed, profit.

3.      Before OTC Capital and Elfenbein could resell the shares, however, they needed MSLP's stock transfer agent to issue the shares without a restrictive legend, which would have prevented their resale in the public markets.  MSLP's transfer agent required legal opinion letters opining that the transactions qualified for an exemption from the registration provisions of the federal securities laws before issuing the MSLP shares to OTC Capital without restrictive legends.

4.      To that end, Pittera issued ten opinion letters to MSLP's transfer agent opining that the securities acquired by OTC Capital in the transactions were "free trading" because any re-sale of the shares by OTC Capital purportedly would comply with Rule 144 of the Securities Act ("Rule 144") [17 C.F.R. § 230.144].  Rule 144 requires that a purchaser of securities hold such securities until the expiration of a holding period, which was six months in the case of the MSLP securities acquired by OTC Capital.  Pittera incorrectly stated in his opinion letters that the Rule 144 holding period had been met as to OTC Capital's MSLP securities because the holding period could be calculated from the dates of the original vendor invoices underlying the aged-debt that was purchased by OTC Capital.

2

5.      Pittera's opinion letters were baseless and incorrect because the Rule 144 holding period did not begin to run until the MSLP securities came into existence by virtue of the Debt Settlement Agreements between MSLP and OTC Capital, which were executed only days before OTC Capital and Elfenbein offered and sold the MSLP shares to the public.  The invoices underlying the aged-debt that was the subject of the Debt Settlement Agreements did not constitute securities under the federal securities laws.

6.      The transfer agent would not have issued the MSLP stock without restrictive legends but for Pittera's opinion letters.  Through his role in creating and supplying the opinion letters, Pittera was both a necessary participant and substantial factor in the illegal unregistered offers and sales of MSLP securities by OTC Capital and Elfenbein.

7.      Almost immediately after the transfer agent issued the purportedly unrestricted shares to OTC Capital, OTC Capital and Elfenbein sold them on the market for a substantial profit.  OTC Capital and Elfenbein obtained proceeds of approximately $1.19 million from the unregistered sales of MSLP stock.  Pittera received $5,000 in fees for issuing the ten opinion letters.

8.      By virtue of the conduct alleged herein, the Defendants, directly or indirectly, violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77(e)(a) and 77(e)(c)], and unless restrained and enjoined will engage in future violations of these provisions.

9.      The Commission seeks an order restraining and enjoining the Defendants from violating these provisions of the federal securities laws, requiring the Defendants to disgorge all ill-gotten gains plus pre-judgment interest and pay civil penalties, permanently prohibiting the Defendants from participating in the offering of any penny stock, and granting such other relief as is necessary and appropriate.

## JURISDICTION AND VENUE

10.     The Commission brings this action pursuant to the authority conferred upon it by

Sections 20(b) and (d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)].

11.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and

22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)].

12.     The Defendants, directly or indirectly, singly or in concert, made use of the means

or instruments of transportation or communication in interstate commerce, or of the mails, in

connection with the transactions, acts, practices and courses of business described in this

Complaint.

13.     Venue lies in this Court pursuant to Securities Act Section 22(a) [15 U.S.C. §

77v(a)].  Defendants OTC Capital and Elfenbein are inhabitants of and found in this District,

Defendants transacted business in this District, offers in violation of the federal securities laws

were made from this District, and Defendants engaged in a common scheme of acts that violated

the Securities Act.

## DEFENDANTS

14.     **OTC Capital Partners, LLC**, a Florida limited liability company, was organized

in 2008.  From 2009 to present, Elfenbein has been the Managing Member and sole officer of

OTC Capital and OTC Capital has not had any other members or employees.  Its principal place

of business is Sunny Isles Beach, Florida.  OTC Capital describes its business as providing

financing for companies through aged-debt and other transactions.  Elfenbein has sole control

over all OTC Capital brokerage accounts and trading decisions.

15.     **Adi M. Elfenbein**, 40, resides in Sunny Isles Beach, Florida.  Since May 2009,

Elfenbein has been the sole owner and manager of OTC Capital.  Between 1997 and 2009,

Elfenbein held Series 7 and 63 licenses and worked as a registered representative at several broker-dealers. Elfenbein's only current occupation is his role with OTC Capital.

16. **Joseph L. Pittera**, 49, resides in Torrance, California. Pittera is an attorney licensed to practice law in California and is the founder and sole lawyer of the Law Offices of Joseph L. Pittera, located in Torrance, California. Pittera's practice involves writing opinion letters for clients regarding transactions under the federal securities laws and assisting clients with Commission filings. In addition to the ten letters that Pittera wrote for OTC Capital, Pittera has performed legal work and provided opinion letters for other clients located in the Southern District of Florida. Pittera is currently writing approximately ten opinion letters per month related to compliance with Rule 144.

## **RELATED ENTITY**

17. **MusclePharm Corp.** manufactures and markets sports nutrition products. It is incorporated in Nevada with its principal place of business in Denver, Colorado. In 2010, MSLP filed a registration statement with the Commission pursuant to Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act") and became subject to the reporting requirements of the Exchange Act. MSLP's common stock trades on the "over-the-counter" market and is quoted by OTC Markets Group, Inc., an electronic quoting and trading system, under "MSLP." On September 8, 2015, the Commission instituted cease-and-desist proceedings against MSLP and imposed a cease-and-desist order for, among other violations of the federal securities laws, violations of Sections 5(a) and 5(c) of the Securities Act relating to, in part, the OTC Capital aged-debt transactions that are the subject of this Complaint. (In the Matter of MusclePharm Corporation, Administrative Proceeding File No. 3-16788).

## FACTS

### OTC CAPITAL'S TRANSACTIONS WITH MSLP

18.     In 2011, MSLP lacked cash flow and was unable to pay several hundred thousand dollars of outstanding debt incurred in 2010.  The debt at issue consisted of aged-invoices from vendors for various goods and services.

19.     From February to June 2011, MSLP and OTC Capital engaged in ten transactions involving MSLP debt and stock.  The transactions were designed to induce OTC Capital to pay off MSLP's aged-debts by giving OTC Capital the ability to generate large, virtually guaranteed profits by flooding the market with newly-issued MSLP stock through sales that violated the registration provisions of the federal securities laws.  The transactions followed substantially the same format and used nearly identical documents.

20.     In each of the ten transactions, OTC Capital entered into Debt Purchase Agreements with MSLP vendors who held aged invoices that MSLP had failed to pay.  Under the terms of the agreements, OTC Capital paid MSLP's outstanding debt for various goods and services, and the vendors assigned MSLP's debt to OTC Capital.  Each of the Debt Purchase Agreements specifically stated that the debt being purchased was "evidenced by an invoice."

21.     The invoices purchased by OTC Capital were not securities as defined by the federal securities laws.

22.     Elfenbein signed each of the Debt Purchase Agreements in his capacity as the Managing Member and sole officer of OTC Capital.

23.     OTC Capital also entered into Debt Settlement Agreements with MSLP on the same day Elfenbein signed the Debt Purchase Agreements.  The Debt Settlement Agreements amended the terms of the debt and allowed OTC Capital to convert the debt to MSLP common

stock.  The conversion formulas in the Debt Settlement Agreements included a substantial discount to the market price of the MSLP shares.

24.     The Debt Settlement Agreements for the ten aged-debt transactions between OTC Capital and MSLP are dated: February 1, 2011, February 7, 2011, February 11, 2011, February 18, 2011, February 28, 2011, April 6, 2011, April 15, 2011, May 12, 2011, May 19, 2011, and June 1, 2011.

25.     Elfenbein signed each of the Debt Settlement Agreements in his capacity as the Managing Member and sole officer of OTC Capital.

26.     Also on or about the same day, MSLP's board of directors approved the issuance of shares to OTC Capital in the amounts set forth in the Debt Purchase Agreements and directed MSLP's transfer agent to issue the shares "free of restricted legend, effective thereafter upon opinion of counsel relating to the same."

27.     MSLP did not file a registration statement for any of these transactions.  Because no registration statement was filed and in effect for the transactions, MSLP's transfer agent would not issue the shares without restrictive legends unless it received attorney opinion letters stating that an exemption from registration applied and the shares should be unrestricted.

## PITTERA'S BASELESS OPINION LETTERS

28.     Elfenbein retained Pittera to write opinion letters for the ten aged-debt transactions between OTC Capital and MSLP.  For each transaction, Elfenbein signed the relevant agreements before he emailed them to Pittera.

29.     Pittera signed ten boilerplate opinion letters for the transactions.  Nearly all of the letters are substantially the same except for transaction-specific information, such as the amount

of debt and number of shares.  Pittera opined in each of the letters that the MSLP shares acquired

by OTC Capital should be "free trading."

30.     Pittera's legal opinions are baseless and wrong.  Pittera's legal opinions were

premised on the incorrect conclusion that immediate re-sales of the MSLP securities by OTC

Capital complied with Rule 144.  Rule 144 requires that a purchaser hold securities until the

expiration of a holding period, which was six months after acquiring the securities of an issuer,

such as MSLP, that was subject to Exchange Act reporting requirements and was current in its

reporting obligations.  Pittera opined that the Rule 144 holding period was satisfied at the time

OTC Capital acquired the shares because the holding period could be calculated from the dates

of the invoices underlying the aged-debt purchased by OTC Capital.  However, because the

invoices were not securities, the Rule 144 holding period could not "tack" back to the dates the

invoices were created.  In fact, The Rule 144 holding period did not begin to run until a security

was created, which did not occur until OTC Capital entered into the Debt Settlement Agreements

with MSLP – only days prior to OTC Capital and Elfenbein offering and selling the shares.

Thus, the MSLP shares acquired by OTC Capital were actually restricted when it offered and

sold the shares to the public.

31.     Pittera knew at the time he wrote the opinion letters that the Debt Settlement

Agreements between OTC Capital and MSLP involved aged invoices from MSLP vendors.

32.     In the opinion letters, Pittera failed to analyze whether OTC Capital was an

"underwriter" within the meaning of Sections 4(a)(1) and 2(a)(11) of the Securities Act such that

it was not entitled to any exemption from registration.  Section 4(a)(1) of the Securities Act

exempts from registration transactions by anyone other than an issuer, underwriter, or dealer.

"Underwriter" is defined in Section 2(a)(11) of the Securities Act as "any person who has

purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security. . . ."

33.     OTC Capital did not qualify for the exemption under Section 4(a)(1) because it acted as an underwriter when it obtained the MSLP shares from MSLP with the intent to immediately distribute the shares, and did in fact immediately distribute the shares, by selling the securities into the market.

34.     Pittera knew, or should have known, at the time he wrote the opinion letters that OTC Capital and Elfenbein intended to immediately distribute MSLP securities by selling the securities into the market.

35.     Pittera's opinion letters contained various other errors, such as references to inapplicable provisions of the federal securities laws, incorrect facts, and inaccurate dates.  The opinion letters also incorrectly stated that Pittera was acting as counsel for MSLP.  In fact, Pittera was acting as counsel for OTC Capital and has never performed any legal work for MSLP.

36.     Pittera's incorrect opinion letters related to the ten aged-debt transactions between OTC Capital and MSLP are dated:  February 2, 2011, February 9, 2011, February 14, 2011, February 22, 2011, March 1, 2011, April 6, 2011, April 14, 2011, May 13, 2011, May 24, 2011, and June 13, 2011.

37.     Pittera emailed or faxed each of the opinion letters to Elfenbein in Florida with the understanding that the letters would be sent to the transfer agent to remove the restrictive legends on the MSLP shares.  Elfenbein almost immediately emailed or otherwise transmitted the opinion letters to MSLP in Colorado.  MSLP then emailed the opinion letters and other documents related to the transactions to MSLP's transfer agent.

38.     Pittera charged OTC Capital $500 for each opinion letter and received $5,000 in total fees.  Elfenbein wired the fees to a bank account in the name of the Law Offices of Joseph L. Pittera.

39.     But for Pittera's opinion letters, the transfer agent would not have issued the MSLP stock to OTC Capital without restrictive legends.  Pittera was both a necessary participant and substantial factor in the unregistered sales of MSLP securities by OTC Capital and Elfenbein that violated Section 5 of the Securities Act.

<b>THE ILLEGAL OFFERS AND SALES</b>

40.     From February to June 2011, OTC Capital and Elfenbein obtained approximately 24 million shares of MSLP stock through the aged-debt transactions.

41.     Elfenbein caused all of the MSLP shares to be deposited in two of OTC Capital's brokerage accounts.  Elfenbein had sole control over all OTC Capital brokerage accounts and made the trading decisions.  Elfenbein almost immediately, usually within 24 hours, placed orders to offer and sell the purportedly unrestricted MSLP shares into the market.

42.     Elfenbein made misstatements in certain Deposit Securities Request Forms transmitted to the firm that provided clearing services for one of the brokerage accounts.  For example, in these forms, Elfenbein misstated that OTC Capital had received and sold zero MSLP shares in the last year.  In fact, OTC Capital had received and sold millions of MSLP shares in that period.

43.     OTC Capital and Elfenbein obtained and sold the MSLP shares associated with the ten aged-debt transactions as follows:

| Date of Debt Settlement Agreement between OTC Capital and MSLP | Number of MSLP shares obtained by OTC Capital | Date purportedly unrestricted MSLP shares deposited in OTC Capital's brokerage account | Date Range of Sales by OTC Capital |
|---|---|---|---|
| February 1, 2011 | 833,333 | February 3, 2011 | February 4-8, 2011 |
| February 7, 2011 | 1,250,000 | February 9, 2011 | February 10-11, 2011 |
| February 11, 2011 | 2,000,000 | February 15, 2011 | February 15-18, 2011 |
| February 18, 2011 | 1,667,000 | February 23, 2011 | February 24-25, 2011 |
| February 28, 2011 | 2,187,666 | March 4, 2011 | March 7-11, 2011 |
| April 6, 2011 | 2,000,000 | April 7, 2011 | April 8-12, 2011 |
| April 15, 2011 | 2,000,000 | April 15, 2011 | April 15-20, 2011 |
| May 12, 2011 | 3,023,040 | May 23, 2011 | May 23-25, 2011 |
| May 19, 2011 | 4,031,863 | June 6, 2011 | June 6-10, 2011 |
| June 1, 2011 | 4,932,500 | June 14, 2011 | June 14-20, 2011 |
| TOTAL | 23,925,402 | | |

44.     During the relevant period, MSLP stock was a "penny stock" as defined by Section 3(a)(51)(A) of the Exchange Act [15 U.S.C. § 78c(a)(51)(A)] and Rule 3a51-1 thereunder [17 C.F.R. § 240.3a51-1], meaning that, among other things, the stock traded below five dollars per share during the relevant period and the securities did not meet any of the exceptions from the definition of "penny stock" contained in Rule 3a51-1.

45.     OTC Capital and Elfenbein received approximately $1.19 million from sales of MSLP stock acquired through the aged-debt transactions.

46.     Through his role in creating and supplying the opinion letters, Pittera was both a necessary participant and substantial factor in the unregistered offers and sales of MSLP securities by Elfenbein and OTC Capital.

47.     No registration statement was filed or in effect for the Defendants' offers and sales of MSLP securities pursuant to Section 5 of the Securities Act.

48.     The Defendants used means and instruments of interstate commerce and the mails in connection with the unregistered offers and sales of MSLP securities, including in the form of

emails and facsimiles, electronic transfers of securities and funds, and brokerage transactions to offer and sell the securities.

49.     The federal securities registration requirements protect investors by promoting full disclosure of information thought necessary to informed investment decisions.  Purchasers of MSLP securities offered and sold by the Defendants were deprived of such protections by the Defendants' misconduct.

**CLAIM FOR RELIEF**
**Offer and Sale of Unregistered Securities – Violations of Sections 5(a) and 5(c) of the Securities Act**
**[15 U.S.C. §§ 77e(a) and 77e(c)]**

50.     Paragraphs 1 through 49 are re-alleged and incorporated by reference as if fully set forth herein.

51.     The MSLP shares that OTC Capital, Elfenbein, and Pittera offered and sold to the investing public as alleged herein constitute "securities" as defined by Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)].

52.     OTC Capital, Elfenbein, and Pittera directly or indirectly, singly or in concert, made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer and sell securities through the use or medium of a prospectus or otherwise, and carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, such securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such offers and sales of securities and when no exemption from registration was available.

53.     By reason of the activities described herein, OTC Capital, Elfenbein, and Pittera directly or indirectly, singly or in concert, violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## PRAYER FOR RELIEF

Wherefore the Commission respectfully requests that the Court grant the following relief:

I.

A final judgment permanently restraining and enjoining OTC Capital, Elfenbein, and Pittera, and any officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the final judgment by personal service or otherwise, and each of them, from violating Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

II.

A final judgment ordering OTC Capital, Elfenbein, jointly and severally, and Pittera to disgorge all ill-gotten gains, plus pre-judgment interest.

III.

A final judgment ordering OTC Capital, Elfenbein, and Pittera to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

IV.

A final judgment permanently prohibiting OTC Capital, Elfenbein, and Pittera from participating in the offering of any penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)].

V.

Order such other relief as the Court deems appropriate.

## JURY DEMAND

The Commission demands a jury in this matter.

13

Dated:  January 22, 2016

Respectfully submitted,

s/ Zachary T. Carlyle
Zachary T. Carlyle
Colorado Bar No.:  34962
Attorney for Plaintiff
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, Colorado 80294-1961
Telephone:  (303) 844-1000
Email:  carlylez@sec.gov